UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TANIA LAINE SHARBROUGH,<br><br>         Petitioner,<br><br>   v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security<br>Administration,<br><br>         Respondent. | Case No. 2:19-CV-00134-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Pending before the Court for consideration is Tania Sharbrough's Petition for

Review of the Respondent's denial of social security benefits, filed on April 17, 2019.

(Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and

the administrative record (AR), and for the reasons that follow, will affirm the decision of

the Commissioner.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On September 16, 2015, Petitioner filed a Title II application for a period of disability and disability insurance benefits, a Title XVI application for supplemental security income, and an application for disabled widow's benefits, claiming disability beginning February 28, 2015. The applications were denied initially and on reconsideration, and a hearing was conducted on November 15, 2017, before Administrative Law Judge (ALJ) Lori Freund. After considering testimony from Petitioner, medical expert Andrew Brown, M.D., and a vocational expert, ALJ Freund issued a decision on March 13, 2018, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request on February 13, 2019.

Petitioner, who is appearing pro se,[1] timely appealed this final decision to the Court on April 17, 2019. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). At the time of the hearing, Petitioner was fifty-one years of age. Petitioner has a high school education, and her prior work experience includes work as a housekeeping cleaner; laborer, stores; sales clerk; janitor; and retail store manager.

---

[1] Attorney Louis Garbrecht represented Petitioner during the administrative proceedings until he withdrew on October 4, 2016. AR 471, 676 – 677; 653. Petitioner was later represented during the administrative proceedings by Dorene Carney, a non-attorney Disability Representative, whom Petitioner appointed on October 12, 2016. AR 470, 472, 705 – 709.

**MEMORANDUM DECISION AND ORDER - 2**

## STANDARD OF REVIEW

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

Petitioner raises the following issues on appeal:

1.     Did the administrative law judge (ALJ) reasonably conclude that the record was sufficiently developed?

2.     Did the ALJ err at step three in finding Petitioner's impairments did not meet or equal a listed impairment?

3.     Did the ALJ reasonably evaluate Petitioner's subjective symptom testimony?

4.     Did the ALJ present a complete hypothetical to the vocational expert in support of her residual functional capacity (RFC) finding?

## 1.     The Record Was Adequately Developed

Petitioner argues the ALJ had a duty to develop the record, yet failed to obtain

records from her treating providers after March of 2017. AR 283; Pet. Brief at 14. (Dkt

17 at 28.) "The ALJ in a social security case has an independent 'duty to fully and fairly

develop the record and to assure that the claimant's interests are considered.'"

*Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80

F.3d 1273, 1288 (9th Cir. 1996)). But an ALJ's duty to develop the record further is

triggered only when there is ambiguous evidence or when the record is inadequate to

allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th

Cir. 2011) (citing *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)).

Petitioner has not established that the record was either ambiguous or inadequate

to allow the ALJ to properly evaluate the evidence. First, Petitioner finds fault with the

**MEMORANDUM DECISION AND ORDER - 4**

ALJ's observation that Petitioner sought care in May of 2016 from rheumatologist Dustin

Dinning, D.O., and again in March of 2017, but failed to follow up with Dr. Dinning until

October of 2017 for further treatment of her arthritis pain with Humira. AR 283; 1000;

1164; 1218. The ALJ notes there are no records indicating progress or otherwise until

March of 2017, and that there is no indication in the record why Petitioner did not follow-

up with Dr. Dinning until October of 2017. The ALJ concluded that a reasonable

inference from these gaps in treatment related to Petitioner's arthritis pain was that

Petitioner's pain symptoms were adequately controlled through at least March of 2017.

AR 283.

Petitioner asserts she had appointments with Dr. Dinning on December 2, 2016,

and April 5, 2017, and appointments after March of 2017 that were related to her

abdominal complaints. This is noted by the ALJ in her written determination, as she

referenced the bulk of Petitioner's treatment records throughout 2017, noted they were

related to Petitioner's non-severe abdominal issues, and discussed them in the context of

her findings. AR 283. Further, there are records in the file related to Petitioner's physical

therapy treatment, obtained in May of 2016; complaints of tinnitus in May of 2016; and

Dr. Dinning's referral of Petitioner for pain management, sought between August and

November of 2016. AR 1020; 1056; 1102 – 1128.

The Petitioner's legal representatives assisted Petitioner in obtaining and

submitting medical records on her behalf. AR 676 – 677; 653; 705 – 709. Petitioner

supplied also many records after the hearing, the majority of which appeared to be

**MEMORANDUM DECISION AND ORDER - 5**

duplicates of records already before the ALJ. AR 23 – 271. In other words, the administrative record contains information about Petitioner's treatment history throughout the period between May of 2016 and October of 2017.

Second, Petitioner argues that the ALJ failed to obtain older records prior to 2014, including records dating back to 2004 related to her diagnoses of Ankylosing Spondylitis, Fibromyalgia, and other conditions. Dkt. 17 at 29. The ALJ has a responsibility to assist Petitioner in developing her complete medical history for "at least the 12 months preceding the month" in which she filed her application. 20 C.F.R. § 404.1512. Here, Petitioner alleged disability beginning February 28, 2015, and she filed her application for disability benefits on September 16, 2015. The administrative record before the ALJ contained medical records related to her diagnosis of Ankylosing Spondylitis from 2004, and records from providers dating back to February 26, 2014, up through October 13, 2017. AR 286, 751, 1218, 1225 – 1226. Petitioner thereafter supplied records relating to treatment obtained after October of 2017, which treatment related to her complaints of abdominal pain and right shoulder pain. AR 44, 58. The ALJ issued her written determination on March 13, 2018, and discussed Petitioner's abdominal and shoulder pain. AR 283 – 84.

The Court therefore finds that Petitioner has not established the record was inadequate for the ALJ to make a determination related to Petitioner's claim of disability beginning on February 28, 2015, nor that the ALJ erred with respect to her characterization of the treatment Petitioner received from Dr. Dinning and other

**MEMORANDUM DECISION AND ORDER - 6**

providers. Despite Petitioner's alleged error, the Court finds the record was sufficiently developed.

**2.      The ALJ Did Not Err at Step Three**

At step three, the ALJ determines if a claimant's impairment meets or equals an impairment listed in Appendix 1 to Subpart P of Regulation Nos. 4. The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. § 404.1525. If a claimant meets or equals a listed impairment, then he or she will be found disabled at step three of the sequential process without further inquiry. *See* 20 C.F.R. § 404.1520(d).

To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (citing 20 C.F.R. § 404.1526).

First, Petitioner contends here that the ALJ erred with respect to her step three finding that Petitioner's degenerative disc disease of her lumbar and cervical spine did not meet Listing 1.04, related to "Disorders of the Spine." Dkt. 17 at 35. Petitioner argues she meets the criteria of Listing 1.04, because she suffers from spinal stenosis and

degenerative disc disease in her lumbar spine that causes nerve root compression, and numerous imaging studies show progressively worsening disc space narrowing. Dkt. 17 at 35 – 43. Petitioner claims also that she suffers from neroanatomic distribution of pain, radiating pain into her lower extremities, and pain upon ambulation. Dkt. 17 at 43 – 45. And last, Petitioner indicates that the record establishes limited range of motion in her lumbar spine as well as sensory or reflex loss. Dkt. 17 at 45 – 47.

As for her cervical spine, Petitioner states she underwent an anterior cervical discectomy and fusion at C5-6 and C6-7 in November of 2015, and continues to have pain after surgery. She was also diagnosed with a reversal of lordotic curvature. She claims her continued pain qualifies for listing status. Dkt. 17 at 39 – 41.

To meet Listing 1.04, there must be objective evidence of "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture, resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); OR
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; OR
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to

**MEMORANDUM DECISION AND ORDER - 8**

ambulate effectively, as defined in 1.00B2b.

At the hearing, the ALJ sought opinion testimony from an impartial medical expert, Andrew Brown, M.D., who is board certified in Physical Medicine and Rehabilitation, and possesses more than 35 years of experience. He testified that Petitioner's medical records established a history of chronic low back pain with disc degeneration, facet arthropathy, bulging and foraminal stenosis on L4 through S1, as well as a grade 1 anterolisthesis at L4-5. AR 304. Dr. Brown reviewed the various medical imaging reports contained in the record and summarized by Petitioner in her brief, which include MRI's of the lumbosacral spine dated August 22, 2015, and April 25, 2017; MRI's of the thoracic spine dated August 22, 2015; and X-rays of her lumbar spine dated May 19, 2016, and May 17, 2017. AR 304. Dr. Brown testified that Petitioner's lower lumbar and thoracic impairments did not meet or equal Listing 1.04, because there was no ongoing weakness, sensory loss, reflex changes or positive straight leg testing. AR 304.[2]

Dr. Brown also reviewed medical records related to Petitioner's diagnosis of chronic cervical pain with degenerative spondylosis and degenerative disc disease, facet arthropathy and foraminal stenosis from C5 through C7. AR 305. Included in his review

---

[2] There is no evidence in the record substantiating the requirements of Listing 1.04B or C. None of the medical records the Court reviewed established the presence of spinal arachnoiditis confirmed either by an operative note or pathology report, or by medical imaging, or pseudoclaudication established by findings on appropriate medically acceptable imaging. Thus, it appears Dr. Brown limited his consideration of Listing 1.04 to the criteria in subsection A.

**MEMORANDUM DECISION AND ORDER - 9**

were an MRI dated August 22, 2015, and multiple x-rays of the cervical spine. Dr. Brown testified that Petitioner's cervical spine impairments did not meet or equal Listing 1.04, because there was no evidence of ongoing sensory loss, weakness or reflex changes caused by her cervical spine condition. AR 305.

The Court's independent review of the record reveals Petitioner's arguments regarding Listing 1.04 are not supported. The medical expert's testimony was based on the available medical evidence. A review of the same reveals that Petitioner subjectively complained of low back pain radiating into her lower extremities, but that objective examination results did not reveal motor loss or atrophy with associated muscle weakness accompanied by sensory or reflex loss and a positive straight-leg raising test. AR 1003 – 4. Similarly, Petitioner subjectively complained of cervical pain. However, examination findings from October 13, 2017, revealed only mild to moderate pain and reduced range of motion of the lumbar spine, and mild pain with motion of the cervical spine. AR 1222 – 23. Office treatment records dated November 2, 2015, and related to Petitioner's cervical spine complaints, revealed 5/5 strength on testing of her upper and lower extremities, and intact sensory sensation throughout the upper and lower extremities. AR 1173 – 74. Neurologic testing conducted on May 17, 2017, revealed intact strength in Petitioner's upper and lower extremities and normal reflexes, and a physical examination did not reveal lumbar radiculopathy. AR 1167 – 68. There are no records indicating a

**MEMORANDUM DECISION AND ORDER - 10**

positive straight-leg raising test.[3]

Based upon the record, the Court finds there is substantial evidence to support the ALJ's conclusion that Petitioner did not suffer from motor loss or atrophy associated with muscle weakness accompanied by sensory or reflex loss attributable to her lumbar and cervical spine disorders, and therefore did not meet Listing 1.04. Nor has Petitioner argued or established that her impairments are equal to Listing 1.04. "Medical equivalence must be based on medical findings." 20 C.F.R. § 404.1526. A generalized assertion of functional difficulties is not sufficient to establish disability at step three. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 C.F.R. § 404.1526).

Second, Petitioner raises the prospect of error with respect to the ALJ's finding that Petitioner did not meet Listing 1.02 (Major Dysfunction of a Joint). Petitioner argues that her osteoarthritis of her right shoulder with impingement, hip osteoarthritis, and bilateral basal joint arthropathy meet this listing, summarizing her symptoms and treatment history. Dkt. 17 at 48 - 41. To meet Listing 1.02, there must be a finding of:

> [G]ross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint, with:
> A: Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

---

[3] The medical records Petitioner submitted after the hearing do not contain evidence refuting the examination findings with respect to Petitioner's lumbar and cervical spine disorders.

**MEMORANDUM DECISION AND ORDER - 11**

The ALJ's medical expert, Dr. Brown, reviewed Petitioner's medical records related to her osteoarthritis of the right shoulder with impingement, osteoarthritis of bilateral hips, and bilateral basal joint arthropathy. AR 305. Dr. Brown testified at the hearing that, with respect to Petitioner's hand and shoulder disorders, he could not find evidence of an inability to do fine gross movements bilaterally as defined in 1.00B2c. And, with respect to her hip disorder, which revealed the presence of osteoarthritis and pain, Dr. Brown testified that the record contained no evidence of decreased range of motion or inability to ambulate effectively as defined in 1.00B2b. Based upon this testimony, the ALJ concluded Petitioner's bilateral first carpometacarpal osteoarthritis, osteoarthritis of the right shoulder with impingement, and osteoarthritis of the hips did not meet listing 1.02. AR 279.

The Court's independent review of the record, including the medical imaging results reviewed by the ALJ and the testifying medical expert, confirm the existence of substantial evidence supporting the ALJ's conclusion that Petitioner's impairments did not meet the requirements of Listing 1.02.

Petitioner mentions also the ALJ's consideration of her Ankylosing Spondylosis and the ALJ's determination that the condition did not meet the criteria of Listing 14.09, Inflammatory Arthritis. Dkt. 17 at 42. Petitioner does not, however, make any particular argument asserting error in connection with this determination. Nonetheless, the Court finds, based on its review of the record, that the ALJ's determination Petitioner's

**MEMORANDUM DECISION AND ORDER - 12**

Ankylosing Spondylosis did not meet the criteria of Listing 14.09 is supported by substantial evidence because the record does not demonstrate ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination. AR 280.[4]

Accordingly, the Court finds the ALJ's determination that Petitioner's impairments did not meet or equal either Listing 1.04, 1.02, or 14.09 was supported by substantial evidence in the record as a whole.

## 3.    Subjective Symptom Testimony

Petitioner contends that the ALJ erred by rejecting Petitioner's subjective symptom testimony concerning her pain, and that the ALJ misstated the record. Dkt. 17 at 57 – 59. The ALJ found that, while Petitioner's complaints of pain could reasonably be expected to cause the symptoms alleged, Petitioner's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 281. The ALJ engaged in a lengthy analysis of the opinion testimony given by Dr. Brown at the hearing, and of the medical evidence of record documenting Petitioner's medical treatment between 2003 and 2017. AR 283 – 284. Nonetheless, Petitioner contends that the ALJ does not support her finding with appropriate citation to the medical evidence of record.

The ALJ engages in a two-step process for evaluating a claimant's testimony about

---

[4] The ALJ incorrectly identifies Listing 14.09 as disorders of the spine. A review of Listing 14.09 and the ALJ's analysis in her written determination reveals that she considered the correct listing corresponding to Petitioner's diagnosis of Ankylosing Spondylitis.

**MEMORANDUM DECISION AND ORDER - 13**

the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Trevizo*, 871 F.3d at 678 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL

1119029 at *1-2.[5] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the record. See id. at *6-7.

The ALJ's decision may be upheld even if not all of the ALJ's reasons for discrediting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Security Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, make an adverse finding "solely because" the claimant's symptom testimony "is not substantiated

---

[5] SSR 96-7p was superseded by SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo*, 871 F.3d at 679 n.5.

**MEMORANDUM DECISION AND ORDER - 15**

affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Rather, an ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain" or other symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). But, the ALJ may not reject subjective pain or other symptom testimony merely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883.

Petitioner testified at the hearing that she ceased working on August 18, 2015, because she was in a lot of pain. AR 316 – 317. She testified that she saw numerous treatment providers to address her pain complaints, but that obtaining appropriate treatment was difficult for various reasons, such as the retirement of her physician, her inability to pay due to lack of insurance, and the onset of abdominal symptoms that took precedence over her spinal pain. AR 317 – 324. She explained she uses a "sit-down type of walker" to help her walk, and that to go shopping, she uses a shopping cart to lean on. AR 325 – 326. However, she testified that walking is "not a problem for me. That's actually when I'm most at ease," and that sitting and standing in one position bothers her more. AR 325 – 326. To compensate, she testified that she changes position from sitting to standing often, or will walk or move about. AR 328 – 329. She testified she has trouble sleeping as well. AR 327 – 328.

With regard to her upper extremities, Petitioner testified she had surgery to address pain at the base of her right thumb. AR 329. She does not wear a brace on either of her hands, and although she has pain in both hands, she "can live with it." AR 330. She

**MEMORANDUM DECISION AND ORDER - 16**

testified she has her roommate assist her with particular activities of daily living because her right shoulder pain inhibits overhead reaching, resulting in difficulty washing and brushing her hair, and causes pain when performing other activities, such as brushing her teeth. AR 330 – 331.

Petitioner's function report, which she completed January 6, 2016, states that she can drive, shop in stores, prepare simple meals daily, and perform household chores when needed. AR 645 – 650. She states, however, that she has difficulty due to her medical conditions with all aspects of movement. AR 650. At the hearing, Petitioner testified she experiences pain in her back, neck, hips, SI joints, shoulders, and hands. AR 332 – 337. She testified that the medications prescribed by her physicians help, however. AR 337.

The ALJ found that the overwhelming weight of the medical evidence supported a determination that the degree of severity or limitation described by Petitioner was unpersuasive and unsupported by objective medical evidence. Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective symptom testimony. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). The ALJ considered the objective medical evidence as a whole, which indicated Petitioner demonstrated no gross abnormalities and which the ALJ considered inconsistent with Petitioner's reports of complete disability related to her pain. The ALJ determined Dr. Brown's testimony concerning Petitioner's limitations was consistent with the medical evidence of record, which included Petitioner's normal physical examinations, and her reports of improvement with medication, surgery, and physical

**MEMORANDUM DECISION AND ORDER - 17**

therapy. AR 282. The ALJ noted also that Petitioner retained full muscle strength in her bilateral upper and lower extremities, and exhibited no sensory loss or decreased reflexes. AR 283.

The Court finds the ALJ provided clear and convincing reasons supported by substantial evidence in the record as a whole for rejecting Petitioner's subjective symptom testimony related to her allegations of disabling pain. The ALJ identified the evidence that undermined the severity of Petitioner's subjective symptom testimony, and she discussed the evidence that contradicted Petitioner's testimony. "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation ... and those findings are supported by substantial evidence in the record, [the Court's] role is not to second-guess that decision." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The Court therefore finds that the ALJ's evaluation of Petitioner's subjective symptom testimony and her rejection of Petitioner's claims of disabling pain is supported by substantial evidence in the record.

**4.     The ALJ's RFC Determination**

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, i.e., whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). A claimant's residual functional capacity is the most she can do despite

her limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id*. Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.2005). An ALJ must include all limitations supported by substantial evidence in her hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss*, 427 F.3d at 1217.

Before formulating her hypothetical question to the vocational expert, the ALJ queried Dr. Brown concerning limitations to work-like activities anticipated as a result of Petitioner's impairments. AR 306 – 309. Dr. Brown expressed the opinion that Petitioner would have limitations in relation to lifting, sitting, standing, and walking. Dr. Brown limited Petitioner to lifting up to 20 pounds occasionally, 10 pounds frequently; standing for up to two hours, and walking for up to four hours, but he limited walking and standing to no more than 30 minutes at a time; and sitting to one hour intervals. AR 342. Dr. Brown testified that Petitioner would be limited to frequent overhead reaching bilaterally, continuous fingering and feeling, but only occasional to frequent handling, with a decrease in grip strength due to arthritis of the thumbs. Dr. Brown recognized that Petitioner's complaints related to her right shoulder did not begin until January of 2015, so as of that date, Dr. Brown indicated Petitioner's ability to reach overhead should be limited to occasionally. Finally, Dr. Brown testified concerning Petitioner's ability to use her feet, climb, balance, stoop, kneel and crouch, which he limited to occasionally. Petitioner's representative had an opportunity to question Dr. Brown, and Dr. Brown

**MEMORANDUM DECISION AND ORDER - 19**

explained the reasons for his assessment of limitations related to Petitioner's impairments. AR 309 – 315.

Based largely upon Dr. Brown's testimony, the ALJ formulated a hypothetical for the vocational expert. AR 342. The hypothetical included the following limitations: lifting up to 20 pounds occasionally and lifting and carrying up to 10 pounds frequently; standing for up to two hours, walking for up to four hours, but with a limitation of standing and walking for no more than thirty minutes at a time; sitting for one hour intervals for up to seven hours; pushing and pulling bilaterally frequently; occasional use of foot controls; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling and crouching; occasional reaching with the right upper extremity; and frequent bilateral handling. AR 342 – 343.

Based upon the hypothetical, the vocational expert opined that such an individual could not perform Petitioner's past relevant work, but could perform a range of light work, and would be able to perform the duties required of a mailroom clerk, storage rental clerk, and routing clerk. AR 343 – 344. When questioned further, the vocational expert testified that the jobs she identified would allow for at will postural changes and would not require continuous handling. AR 345 – 347. The ALJ incorporated these same findings in her written determination setting forth Petitioner's RFC. AR 280.

The ALJ concluded in her written determination that Petitioner retained the RFC to perform light work, but that Petitioner's ability to perform all or substantially all of the requirements of light work was impeded by additional limitations. Relying upon the

**MEMORANDUM DECISION AND ORDER - 20**

testimony of both Dr. Brown and the vocational expert, the ALJ concluded Petitioner could perform the requirements of representative occupations such as mailroom clerk, storage rental clerk, and routing clerk. AR 285 – 86.

Petitioner argues that the hypothetical question posed to the vocational expert was in error because it failed to include all of Petitioner's limitations supported by the record. The ALJ's hypothetical question posed to the vocational expert was the same as the ALJ's RFC determination, which in turn was based upon the ALJ's evaluation of Petitioner's subjective symptom testimony, the objective medical evidence, and the opinions of Dr. Brown, who reviewed the medical evidence and provided opinions regarding Petitioner's limitations.

As discussed above, the Court finds the ALJ did not err with regard to her finding that Dr. Brown's testimony was consistent with the medical evidence of record, and the ALJ's decision to afford Dr. Brown's opinions great weight was supported by substantial evidence. In addition, the Court finds the ALJ did not err in her assessment of Petitioner's subjective symptom testimony. Therefore, the Court finds the ALJ's hypothetical included all of Petitioner's limitations that were supported by substantial evidence in the record.

**MEMORANDUM DECISION AND ORDER - 21**

## CONCLUSION

Based on the above, the Court finds the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Petitioner has not met her burden of establishing harmful error in support of her request for remand. Accordingly, the Commissioner's decision will be affirmed.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) The Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED**.

2) The Petition for Review (Dkt. 1) is **DISMISSED**.

DATED: November 30, 2020

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 22**